*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0968**

State of Minnesota,
Respondent,

vs.

Daniel Roy Luckhardt,
Appellant.

**Filed May 28, 2024**
**Affirmed in part, reversed in part, and remanded**
**Schmidt, Judge**

Lyon County District Court
File No. 42-CR-22-647

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Matthew B. Gross, Marshall City Attorney, Marshall, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schmidt, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

In this appeal from the final judgment of conviction for driving while impaired (DWI), appellant Daniel Roy Luckhardt argues that the district court erred by denying his motion to suppress test results that were positive for methamphetamine because random

drug testing was not a condition of his probation imposed by the court. Luckhardt also argues that the district court erred by entering convictions for both third- and fourth-degree DWI. Because the district court did not err in denying Luckhardt's motion to suppress, we affirm his conviction of third-degree DWI. We reverse and remand for the limited purpose of vacating the fourth-degree DWI conviction.

## FACTS

In May 2021, a district court sentenced Luckhardt in a separate matter and placed him on probation. After Luckhardt violated his probation in January 2022, the district court reinstated all previous conditions of his probation and imposed additional conditions that required Luckhardt to obtain a chemical-use assessment within 30 days and abide by all recommendations resulting from that assessment.

In February 2022, Luckhardt completed the chemical-use assessment, which recommended that he abstain from mood altering substances and be subject to random drug testing at the request of probation or law enforcement.

In June 2022, Luckhardt's probation officer randomly tested Luckhardt for controlled substances at the department of corrections office. Upon testing positive for methamphetamine, Luckhardt signed an admission form confessing he had used methamphetamine and that he had driven to the probation officer's office. The probation officer contacted law enforcement and reported the positive-test result. Luckhardt later admitted to police that he had driven to the probation office and tested positive for methamphetamine. An officer arrested Luckhardt and transported him to the law enforcement center.

A police officer then applied for, and was granted, a search warrant for Luckhardt's blood or urine based upon the information provided by the probation officer and Luckhardt's admission. Luckhardt provided a urine sample, which revealed the presence of amphetamine and methamphetamine.

Respondent State of Minnesota charged Luckhardt with third- and fourth-degree DWI. Luckhardt filed a motion to suppress the results of the random drug test, arguing that it was an illegal warrantless search. Luckhardt asserted that the condition of random drug testing was impermissible "as it was imposed by a chemical use assessor and not the [district court]."

The district court denied Luckhardt's motion to suppress, concluding that "the random drug testing and no use recommendations of the chemical assessment are given proper legal force by the Court's imposition of the probationary condition that [Luckhardt] undergo a chemical-health assessment and follow all recommendations of the assessment." The court determined that the probation officer's random drug test "was lawful, as the random drug testing recommendation became a condition of probation properly imposed by the [district court] upon the chemical assessor's determination it was appropriate."

After a stipulated-facts trial, the district court found Luckhardt guilty of both third- and fourth-degree DWI. The court sentenced Luckhardt to 365 days in jail on his third-degree DWI conviction and imposed no sentence on the fourth-degree DWI conviction. The order of commitment lists convictions for both third- and fourth-degree DWI.

This appeal follows.

**DECISION**

**I.  The district court did not err in denying Luckhardt's motion to suppress.**

Luckhardt argues that the district court erred in denying his motion to suppress because the random testing recommendation from his chemical assessment "was not part of the court-imposed probation condition requiring him to complete a chemical-health assessment and follow the assessment's recommendations."  Luckhardt argues that the testing recommendation by the assessor exceeded their authority to administratively implement the court-imposed probation conditions and, as such, "the district court erred in finding that the assessor's recommendation was a court-imposed probation condition."

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo."  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation and citation omitted).

At the outset, we note that Luckhardt has already challenged the propriety of the chemical-use assessment recommendations becoming conditions of his probation when he appealed from the revocation of his probation.  *See State v. Luckhardt*, No. A23-0606, 2024 WL 163351 (Minn. App. Jan. 16, 2024), *rev. denied* (Minn. Mar. 27, 2024).  This court rejected the argument and concluded that the district court "properly ordered Luckhardt to comply with the chemical-use assessment recommendations as a condition of his probation."  *Id.* at *1.  Luckhardt raises similar challenges to the conditions of his probation in this appeal from his DWI convictions.  Although the issues are similar, we will analyze the issue as Luckhardt frames it in this appeal.

4

"Determining conditions of probation is exclusively a judicial function that cannot be delegated to executive agencies." *State v. Henderson*, 527 N.W.2d 827, 829 (Minn. 1995). However, it is well established that a court does not improperly delegate its authority by requiring a person, as a condition of their probation, to follow the recommendations of a chemical-health assessment. *See State v. Bradley*, 756 N.W.2d 129, 133 (Minn. App. 2008). In *Bradley*, this court determined that:

> When the district court ordered appellant to undergo a chemical-health assessment and follow all recommendations of the assessment once treatment was recommended, appellant's participation in that treatment was mandated by the court's order. The district court simply delegated to the chemical-health assessor the expert determination as to whether appellant needs treatment and, if so, the type or level of appropriate treatment. But the district court, not the chemical-health assessor, imposed the condition that appellant undergo the chemical-health assessment and attend treatment, if recommended. We conclude that allowing a chemical-health assessor to determine a probationer's need for treatment and the type or level of treatment needed, if any, delegates only administrative implementation of a condition imposed by the court. . . . Therefore, the district court did not improperly delegate its sentencing authority when it ordered appellant to complete a chemical-health assessment and follow all recommendations.

*Id.*

The circumstances of *Bradley* are comparable to Luckhardt's. The district court, by requiring Luckhardt to undergo a chemical-use assessment and abide by the recommendations of that assessment, did not improperly delegate its sentencing authority to the assessor; the court simply delegated "administrative implementation of a condition imposed by the court." *Id.*

5

Luckhardt attempts to distinguish his circumstances from *Bradley* by pointing to the fact that his assessor did not recommend treatment, which makes the random drug testing recommendation unrelated "to the assessor's expertise of assessing whether [Luckhardt] needed treatment or the type or level of appropriate treatment." This argument is unpersuasive as *Bradley* is not limited to only recommendations related to treatment. Instead, *Bradley* provides that a district court does not "improperly delegate its sentencing authority when it order[s] [an] appellant to complete a chemical-health assessment and follow *all* recommendations." *Id.* (emphasis added).

Luckhardt also suggests that the assessor's recommendation "failed to comply with the constitutional requirements" because it "allowed law enforcement to randomly test [Luckhardt] without the limitation that such testing be done at the direction of probation." Some nonprecedential caselaw suggests that the scope of the recommendation made following Luckhardt's chemical-use assessment may be overly broad because it allowed for random testing by law enforcement. *See, e.g.*, *State v. Cournoyer*, No. A18-0434, 2019 WL 114198, at *3-4 (Minn. App. Jan. 7, 2019) (concluding that the district court abused its discretion by imposing a probation condition that permitted random drug testing initiated by police officers and reversing the portion of the order imposing that condition).[1]

However, the circumstances of this case are distinguishable from *Cournoyer* and other nonprecedential cases because the issue here is the district court's denial of a motion to suppress Luckhardt's test results, not the propriety of Luckhardt's probation conditions.

---

[1] This, and other nonprecedential opinions referenced in this opinion, are cited for their persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1(c).

In addition, the random drug testing conducted here was done by Luckhardt's probation officer, not by law enforcement. Random testing by probation officers has been recognized as an appropriate probation condition. *State v. Reyes*, No. A19-0647, 2020 WL 132538, at *3 (Minn. App. Jan. 13, 2020) (distinguishing between random testing by probation officers and law enforcement, ultimately concluding that the district court did not abuse its discretion in requiring appellant to submit to random chemical testing by probation, but that it did abuse its discretion by requiring him to submit to random chemical testing by law enforcement); *State v. Londo*, No. A19-1296, 2020 WL 3957275, at *3-4 (Minn. App. July 13, 2020) (concluding that the requirement that a person on probation submit to random chemical tests at the direction of their probation officers to ascertain their compliance with the condition that they abstain from the use of drugs and alcohol does not violate the Fourth Amendment). Because Luckhardt seeks to suppress the results from the probation officer's test, the assessor's recommendation that Luckhardt submit to random testing by law enforcement is immaterial to our analysis. Law enforcement did not perform a random test. Law enforcement only tested Luckhardt after obtaining a search warrant, which was based on the probation test result and Luckhardt's admissions.

Even in cases where this court has reversed a probation condition that authorized police to perform random testing, the remedy was to reverse only the imposition of that condition. *See Cournoyer*, 2019 WL 114198, at *4. The condition allowing for random testing by probation survived. *See id.* at *4-5 (distinguishing the role of probation officers from the role of law enforcement before reversing the portion of the district court's order that required the defendant to submit to random chemical testing by police that was "not

7

initiated by probation"); *see also Reyes*, 2020 WL 132538, at *3 (reversing the condition authorizing random testing by police, and remanding for the district court to clarify that random testing may be performed only by probation). Accordingly, Luckhardt's argument related to random testing by law enforcement has no impact on the propriety of the random test conducted by Luckhardt's probation officer. The district court, therefore, did not err by denying Luckhardt's motion to suppress the results of the random drug test conducted by his probation officer.

## II.     The fourth-degree DWI conviction must be vacated.

Luckhardt argues that "[b]ecause fourth-degree driving while impaired is a lesser-included offense of third-degree driving while impaired, the district [court] erred in entering convictions on both." We agree.

Whether an offense is an included offense of the charged offense is a legal question that appellate courts review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012). An individual "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2022). An included offense is, among other things, "a lesser degree of the same crime." *Id.*, subd. 1(1).

Here, the order of commitment lists convictions for both third- and fourth-degree DWI. The convictions were both based on evidence that Luckhardt drove to his probation officer's office with methamphetamine in his system. Because both convictions were based on the same act, and since fourth-degree DWI is a lesser included offense of third-degree DWI, the conviction for fourth-degree DWI must be vacated.

We affirm the third-degree DWI conviction, reverse the fourth-degree DWI conviction, and remand for the limited purpose of vacating the fourth-degree conviction and correcting the warrant of commitment.

**Affirmed in part, reversed in part, and remanded.**